**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **EARLE ASPHALT COMPANY, INC.**,<br><br>Plaintiff,<br><br>v.<br><br>**NEW JERSEY TURNKPIKE AUTHORITY, *et al.***,<br><br>Defendants. | Civil Action No. 26-4860 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion for a Preliminary Injunction filed by Plaintiff Earle Asphalt Company, Inc. ("Plaintiff") on May 15, 2026. (ECF No. 14.) Plaintiff filed a Memorandum of Law in support of its Motion ("Moving Br.," ECF No. 14-1), along with a Declaration from Brian Cooper ("Cooper Decl.," ECF No. 14-2) and various exhibits (ECF Nos. 14-3–12). Defendants Ocean County and Evesham Township ("Local Defendants"), and Intervenor-Defendants North America's Building Trades Union, Building and Construction Trades Council of Monmouth and Ocean Counties, and United Building Trades Council of Camden County and Vicinity ("Union Defendants") filed an Opposition Brief to Plaintiff's Motion on June 22, 2026. ("Town Opp.," ECF No. 41.) Intervenor-Defendant the State of New Jersey filed an Opposition Brief to Plaintiff's Motion on June 22, 2026. ("State Opp.," ECF No. 44.) Plaintiff filed a consolidated Reply Brief on July 13, 2026. ("Reply," ECF No. 53.) The Court heard Oral Argument on Plaintiff's Motion on September 1, 2026. (ECF No. 76.)

The Court has carefully considered the parties' submissions and oral argument. For the reasons set forth below, the Court will **DENY** Plaintiff's Motion.

## I. BACKGROUND AND PROCEDURAL HISTORY

Before turning to the facts of this case, the Court will provide some necessary background on New Jersey's Project Labor Agreement Act (the "Act").

In 2002, New Jersey enacted the Act, codified at N.J.S.A. § 52:38-1–7. Pursuant to this statute, a project labor agreement ("PLA"), is a "pre-hire collective bargaining agreement covering terms and conditions of a specific project." N.J.S.A. § 52:38-2. The Act allows public entities to include a PLA in a public works project and designate one or more labor unions as the exclusive bargaining representative of employees on that specific project and requires the contractor to hire most employees for the project through the union job referral systems. *See Associated Builders & Contractors Western Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 283–84 (3d Cir. 2023). The statue permits any public entity to enter into a PLA for an appropriate public works project if it will meet the Act's policy goals—including "promoting labor stability and advancing the interests of the public entity in cost, efficiency, skilled labor force, quality, safety, and timeliness." N.J.S.A. § 52:38-3. A PLA negotiated under the Act must contain guarantees against strikes and lock-outs, set forth binding procedures for resolving labor disputes, and require contractors and subcontractors to have an apprenticeship program, among other measures. *Id.* § 52:38-5.

The Act originally applied only to large scale public works projects where the estimated cost was more than $5 million. In January 2026, however, the New Jersey Legislature amended the Act to exempt municipalities, counties, school districts, and fire districts from that $ 5 million threshold. That change prompted Plaintiff's present lawsuit.

Plaintiff "is a heavy civil construction firm" that was founded in 1968 and currently employs more than 650 people across its various divisions. (Cooper Decl. ¶¶ 3, 5.) Approximately 80% of Plaintiff's revenue is generated through public-sector contracts with state agencies, counties, and municipalities, including the New Jersey Turnpike Authority, Ocean County, and Evesham Township. (*Id.* ¶¶ 6–7.) Plaintiff has completed thirty-three (33) projects for the New Jersey Turnpike Authority, eighty-five (85) projects for Ocean County, and seven (7) projects for Evesham Township. (*Id.* ¶ 7.) And over the past decade, Plaintiff has won nearly 45% of Ocean County's projects. (*Id.* ¶ 9.)

On March 3, 2026, Plaintiff submitted a bid of $1,463,513.13 for Evesham Township's 2025 Road Improvement Program, for which it was the lowest bidder out of at least eight other bids. (*Id.* ¶ 18.) About two weeks later, Evesham Township mailed a letter to Plaintiff notifying it that the Township was cancelling all its bids for this project. (*Id.* ¶¶ 21–22.) Following the cancellation, Evesham Township adopted resolution #140-2026, which mandated that all future public works contracts include a PLA on every contract over $200,000. (*Id.* ¶¶ 23–25.)

On April 28, 2026, Evesham Township re-opened its bid for the 2025 Road Improvement Program. (PX 10 at 3.)[1] However, Plaintiff did not re-bid on the project because it believed that doing so "would have required surrendering its First Amendment rights." (Cooper Decl. ¶ 30.)

On April 1, 2026, Ocean County issued a bid notice for another project, which also included a PLA requirement recognizing the Monmouth and Ocean Counties Building and Construction Trades Council. (*Id.* ¶¶ 10, 11.) Specifically, the Ocean County notice stated that "[t]he successful bidder will be required to enter into a [PLA] pursuant to N.J.S.A. 52:38-1, et seq., for the contract work in the form provided with the Bid Specification, and the provisions of the PLA shall govern

[1] References to "PX" refer to Plaintiff's exhibits attached to the Declaration of Brian Cooper.

all labor under contract." (*Id.* ¶ 13.) Plaintiff claims that "[b]ut for the PLA, [it] would have bid on the Ocean County project." (*Id.* ¶ 16.) Plaintiff's reason for declining to bid was that it did not want to "give up its First Amendment rights." (*Id.* ¶ 17.)

On September 1, 2026, the Court held a hearing on Plaintiff's Motion. Instead of taking up the Court's offer to present witnesses and live testimony, Plaintiff elected to rely on the Declaration of one employee that it submitted along with its Motion. Thus, the evidentiary record before the Court at this stage is, to the say least, thin.

## II. SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 based on Plaintiff's claims under federal law.

## III. LEGAL STANDARD

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks and citation omitted). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994). This remedy should be granted only if movants establish that: 1) "they are likely to succeed on the merits of their claims"; 2) "they are likely to suffer irreparable harm without relief"; 3) "the balance of harms favors them"; and 4) "relief is in the public interest." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (citation omitted); Winter v. NRDC, 555 U.S. 7, 20 (2008). The movant must first demonstrate that it can meet the first two factors. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Once those gateway factors have been met, "a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of

granting the requested preliminary relief." *Id.* "When a statute has long been on the books and enforced, . . . it is exceedingly unusual for a litigant who challenges its constitutionality to obtain (or even to seek) a preliminary injunction against its continued enforcement." *Americans for Prosperity Found. v. Albence*, -- F.4th --, 2026 WL 2563151, at *3 (3d Cir. Aug. 31, 2026) (citation modified).

## IV. DISCUSSION

For the reasons explained below, Plaintiff has not met its burden for the issuance of a preliminary injunction. First, Plaintiff does not have standing to seek prospective relief because it has not demonstrated a threatened injury that is "certainly impending" or that has a "substantial risk that the harm will occur." Second, even if Plaintiff did have standing to seek prospective relief, it has not demonstrated a likelihood of success on the merits or irreparable harm. Nor can Plaintiff demonstrate that the balance of equities or public interest weigh in its favor.

### A. STANDING

It is well established that "[s]tanding is a threshold jurisdictional issue." *Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa*, 136 F.4th 456, 461 (3d Cir. 2025). "To establish Article III standing, a plaintiff bears the burden of showing three 'irreducible' elements." *Associated Builders*, 81 F.4th at 287. Those elements are (1) "an injury in fact;" (2) "that is fairly traceable to the challenged conduct of the defendant;" and (3) "that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016).

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). With respect to the "actual or imminent"

requirement, the "disjunctive is critical: it indicates that a plaintiff need not wait until he or she has *actually* sustained the feared harm in order to seek judicial redress, but can file suit when the risk of harm becomes imminent." *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 151 (3d Cir. 2022) (emphasis in original). Indeed, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

But "[s]tanding is not dispensed in gross," and a "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Associated Builders*, 81 F.4th at 287. And for the type of relief sought here, injunctive relief, a plaintiff "must establish that she is likely to suffer future injury from the defendant's conduct." *In re Johnson & Johnson Talcum Powder Prods. Mktg, Sales Practic. and Liability Litig.*, 903 F.3d 278, 292 (3d Cir. 2018).

The State argues that Plaintiff lacks standing to bring its claim because it "has not shown that it faces any imminent First Amendment injuries because it does not allege that it intends to bid on any future PLA-covered project from Evesham or Ocean County." (State Opp. at 9.) According to the State, the Cooper Declaration "makes clear that [Plaintiff] has not and will not bid on any such projects," which "is fatal to its First Amendment challenge." (*Id.*) Plaintiff, in contrast, argues that it has suffered an injury-in-fact because the "PLAs compel union speech and association, in violation of [Plaintiff's] First Amendment rights." (Reply at 4.) Both parties cite *Associated Builders* and *Road-Con* to support their arguments.

In *Associated Builders*, the plaintiffs sued several defendants claiming that PLAs violate the First and Fourteenth Amendments, among other federal and state statutes. 81 F.4th at 283. The PLAs at issue required "all construction work" covered by the agreement to be "contracted

exclusively" to contractors who agree to the terms of the PLAs. *Id.* at 284. Any contractor who works on one these projects must "recognize[] the Unions as the sole and exclusive bargaining representative of all craft employees within their respective jurisdictions working on the Project under the Agreement." *Id.* The Third Circuit held that the plaintiffs had satisfied Article III's concrete and particularized requirements because they alleged a violation of their First Amendment right to associate, namely by being forced to "recognize a union" "hire employees from a union's job-referral system," and "contribute to" unions in order to work on PLA-covered public projects. *Id.* at 289. However, the Third Circuit ultimately found that Article III's actual or imminent requirement was not satisfied because the contractors stated, "they never have and never will bid on PLA-covered projects." *Id.* The Court held that although the contractors were "able and ready" to bid or work on PLA projects, that was insufficient because it did not demonstrate the contractors had an intent to make a future bid. *See id.* at 290.

The Third Circuit's decision in *Road-Con v. City of Phila.*, in contrast, held that a contractor had sufficiently satisfied Article III's standing requirements to bring its claims. 120 F.4th 346, 356 (3d Cir. 2024). There, Philadelphia required PLAs, which required "contractors and their employees to recognize, become members of, and pay dues to designated unions to work on any public works project." *Id.* at 352. The PLAs also required the contractors to meet certain diversity goals. *Id.* The plaintiffs then challenged the PLAs used for two different projects that required the PLAs. *Id.* On appeal, the Third Circuit reiterated its holding in *Associated Builders* and held that the plaintiffs had sufficiently demonstrated an injury to their First Amendment right to associate and held that Plaintiff's injuries were "actual and imminent." First, the Court held that Philadelphia's use of a standard template for its PLAs left the plaintiffs ineligible to work on the two projects unless they changed their union affiliation. *Id.* at 355. Second, the Court held that

the injuries were imminent because several intended to bid on PLA-covered projects at the time the original complaint was filed. *Id.* at 356. In support of this claim, the Third Circuit cited testimony from the plaintiffs that they "were interested in applying or bidding for work on the [two projects] at the moment the lawsuit was filed." *Id.*

Although unpublished, another Third Circuit case merits discussing. This case also involved Plaintiff, and was dismissed by the Third Circuit for lack of standing. *See Earle Asphalt Co. v. Cnty. of Camden*, Civ. Nos. 22-2648 & 22-3166, 2023 WL 8711815, at *1 (3d Cir. Dec. 18, 2023). As explained by the Third Circuit:

> Plaintiffs do not allege that, but for the union requirement, they *would* bid. Instead, they say they are *able and ready* to bid. But it is not enough just to mouth those words. *See id.* at 290–91. Whether a party is "able and ready" is a legal conclusion that depends on the facts. *See Carney v. Adams*, 592 U.S. 53, 61–62 (2020). Plaintiffs must plausibly plead that, "but for the [union] restrictions," they "would have . . . bid on . . . [the] contracts." *Ne. Fla. Chapter*, 508 U.S. at 659 (internal quotation marks omitted). That would make their past harm concrete. Likewise, an allegation that they would bid on contracts would make their potential future harm imminent.

*Id.*

Here, it is clear that Plaintiff has alleged an injury that is both concrete and particularized. First, there is no particularity issue because Plaintiff's alleged harm is to itself. Second, the alleged injury is sufficiently concrete. The PLAs require Plaintiff to "recognize and financially support unions that they would not otherwise support," and "compel[s] Earle to pay contributions on behalf of employees to established union employee benefit funds." (Compl. ¶¶ 116–17.) "Thus, Plaintiff[], no doubt, [has] alleged a concrete injury by alleging a harm to [its] legally protected First Amendment interest to freely associate." *Associated Builders*, 81 F.4th at 289.

Plaintiff, however, has nonetheless failed to demonstrate that it has standing to seek injunctive relief. To establish standing for this prospective relief, Plaintiff must demonstrate that

it is "likely to suffer 'future injury' from [Defendants'] conduct." *In re Johnson & Johnson*, 903 F.3d at 292. Plaintiff has not met that burden.

At most, Plaintiff has shown the existence of alleged past harms, not a "future injur[y]" that is "certainly impending." *Road-Con, Inc.*, 120 F.4th at 355. Although Plaintiff asserts that it would submit a bid "but for" the PLA, it has not identified any project that Ocean County or Evesham Township plans to solicit in the near future. Put differently, Plaintiff has not made "an adequate showing that sometime in the relatively near future it will bid." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995). Indeed, Plaintiff has presented no evidence that either Ocean County or Evesham Township is currently soliciting, or plans to solicit, bids for projects covered by the PLAs. Plaintiff has demonstrated only a general intent to bid on a project; it has not shown that a qualifying project will actually be offered in the future. Because it is unclear on this record whether Ocean County or Evesham Township will issue a bid notice covered by the PLA, Plaintiff's alleged future injury is speculative and hypothetical. Absent some showing that Plaintiff intends to bid on a qualifying project in the near future, Plaintiff lacks standing to seek injunctive relief.

This case is distinguishable from *Road-Con* because there the plaintiffs intended to bid on two projects at the time the original complaint was filed. 120 F.4th at 356. And it was the imminence of those two projects, along with the plaintiffs' intent to bid on those projects, that satisfied Article III's standing requirement. *See id.* Here, by contrast, Plaintiff has demonstrated only the existence of a prior injury related to the 2025 Road Improvement Program. That alleged injury occurred prior to this lawsuit, and Plaintiff has not demonstrated that Ocean County or Evesham Township will solicit bids on projects that Plaintiff intends to bid on in the near future.

Accordingly, Plaintiff has not established a sufficiently imminent future injury and therefore lacks standing to seek prospective injunctive relief.

### B. PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Even if Plaintiff were to have standing to pursue its claim for injunctive relief, the Court finds that it has failed to meet its burden for the extraordinary relief it seeks.

#### 1. <u>Likelihood of Success</u>

Plaintiff asserts that it is likely to succeed on the merits of its First Amendment claim under two theories. The first theory that Plaintiff advances is that the Act requires it to "renounce its 58-year merit shop history, bargain with and recognize labor unions that it otherwise would not bargain with or recognize, and make payments into union benefit funds that it does not want to make payments into." (Moving Br. at 7.) The second theory that Plaintiff advances is that the Act violates its right to freely associate through compelled unionization requirements. (*Id.* at 8.) Neither theory carries the day, at least at this juncture.

##### a) Compelled Speech

"Just as the First Amendment may prevent the government from prohibiting speech, the Amendment may prevent the government from compelling individuals to express certain views, or from compelling certain individuals to pay subsidies for speech to which they object." *U.S. v. United Foods, Inc.*, 533 U.S. 405, 410 (2001). "A violation of the First Amendment right against compelled speech occurs only in the context of actual compulsion, although that compulsion need not be a direct threat." *Miller v. Mitchell*, 598 F.3d 139, 152 (3d Cir. 2010). "In order to compel the exercise . . . of speech, the governmental measure must punish, or threaten to punish, protected speech by government action that is 'regulatory, proscriptive, or compulsory in nature.'" *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 189 (3d Cir. 2005) (citation omitted). Even in the face of

"major funding consequences," the Third Circuit has held that an entity that "voluntarily chose to participate" in a program is not compelled to speak. *Bristol Myers Squibb v. Sec'y U.S. Dep't of HHS*, 155 F.4th 245, 267 (3d Cir. 2025).

Here, as set forth above, Plaintiff argues that the Act requires it to "renounce its 58-year merit shop history, bargain with and recognize labor unions that it otherwise would not bargain with or recognize, and make payments into union benefit funds that it does not want to make payments into." (Moving Br. at 7.) As an initial matter, the Act says nothing about union benefit programs, much less require them. Regardless, Plaintiff can voluntarily choose to bid or not to bid on projects that are governed by the Act, so any alleged speech component is not compelled. And while Plaintiff may forgo certain revenue if it decides not to bid, that is not the kind of direct regulation of speech that can sustain a compelled speech claim. *See Bristol Myers*, 155 F.4th at 267.

b) Freedom of Association

The "freedom of association . . . plainly presupposes a freedom not to associate." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). However, that freedom is not absolute and can be "overridden by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Id.*

To determine whether a group is protected by the First Amendment's expressive associational right, a court "must determine whether the group engages in 'expressive association." *Id.* While the Supreme Court has taken an expansive view of what constitutes "expressive association," a plaintiff must still meet a *de minimis* threshold. *See Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 443 (3d Cir. 2000). Indeed, a plaintiff must "do more than

simply claim to be an expressive association in order to receive the benefits of constitutional protection." *Id.* at 444. If a court determines that a group engages in expressive association, then it must assess whether the challenged statute "would significantly affect the [group's] ability to advocate public or private viewpoints." *Dale*, 530 U.S. at 650.

Here, Plaintiff has failed to demonstrate that it engages in any "policial, social, economic, educational, religious, or cultural" expression. *Id.* at 443. By its own admission, Plaintiff is "a heavy civil construction firm," as opposed to a social, political, values-based, or expressive organization. And while Plaintiff asserts that it "operates exclusively as a non-union or 'merit-shop' contractor," there is nothing in the record demonstrating that it speaks or advocates on this topic. And because "protected expression does not include *any* possible expression," Plaintiff has failed to show that it engages in expressive association. *Id.* at 444; *see also Pi Lambda Phi*, 229 F.3d at 443 (holding that a fraternity was not engaged in expressive association because it failed to provide specific examples how it promotes any ideals); *Associated Builders and Contractors Fl. Coast Chapter v. GSA*, 174 F.4th 26, 40 (11th Cir. 2026) (holding that a PLA does not hinder a contractor's expressive activities because they would only "associate" with the unions "in the sense that they interact with them") (quoting *Rumsfeld v. F. for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 60 (2006)).

For the reasons stated above, the Court finds that Plaintiff has not shown that it is likely to succeed under either of its First Amendment theories.

2. Irreparable harm

Nor can Plaintiff meet its burden to demonstrate the second "gateway" factor for a preliminary injunction. "For harm to be irreparable, it cannot be redressed by a legal or equitable remedy following trial." *Boynes v. Limetree Bay Ventures LLC*, 110 F.4th 604, 610 (3d Cir. 2024) (citation modified). "Economic loss does not constitute irreparable harm." *Acierno v. New Castle*

*Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) (citation modified). Meeting this burden is not easy. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 485 (3d Cir. 2000).

Here, any purported harm to Plaintiff is purely economic. Plaintiff does not plan on submitting any bids covered by a PLA, therefore it is not currently being forced to associate or speak. So even if a PLA-covered project were to be issued by Ocean County or Evesham Township, and Plaintiff refrained from submitting a bid and won at trial, it could be compensated for its economic loss.

Plaintiff's argument that the Act has a "chilling effect" on its speech also misses the mark. (Moving Br. at 11.) Plaintiff's claim, at its core, is that it is unable to pursue business opportunities because of the Act. But any lost business opportunity can be quantified and recoverable by Plaintiff should it succeed on its claims. *See George Harms Const. Co., v. Gateway Dev. Comm'n*, Civ. No. 25-17679, 2025 WL 3551821, at *8 (D.N.J. Dec. 11, 2025) (denying a contractor's motion for preliminary injunction because it can recover damages from any bids that it missed out on as they would be quantifiable). Such an injury is purely economic and does not satisfy Plaintiff's "heavy burden" in demonstrating that an injunction is warranted. *Acierno*, 40 F.3d at 653. Accordingly, Plaintiff has not satisfied either of the two gateway factors necessary for the issuance of a preliminary injunction.

3. <u>Balance of Equities and Public Interest</u>

Although the Court can deny Plaintiff's Motion because it has not demonstrated a likelihood of success on the merits or irreparable harm, the Court will nonetheless assess the final two factors, the balance of the equities and the public interest, which merge, where, as here, the government is the opposing party. *See Del. State Sportsmen's Ass'n, Inc. v. Del. Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024). And when it comes to enjoining state law, "[c]ourts rightly hesitate to interfere with exercises of executive or legislative authority." *Id.* And,

when a state law "has been on the record for more than a decade, it stands to reason that the challenges will survive if it stays there for another year or two." *Albence*, -- F.4th --, 2026 WL 2563151, at *5.

Here, the Act has been the law of the state for more than decade. And while Plaintiff argues that it is challenging the law now because it was recently amended to apply to projects that are valued at less than five million dollars, that change was enacted in January 2026 and Plaintiff did not file the Motion until five months later. Moreover, New Jersey has a "weighty interest in enforcing its law," particularly when the laws at issue are designed to create labor peace and cost predictability for public works projects. *Id.* The harm to New Jersey in granting the injunction therefore counsels against doing so, particularly in light of the thin evidentiary placed record before the Court.

## V. CONCLUSION

For the reasons stated above, the Court will **DENY** Plaintiff's Motion. An appropriate Order will follow.

Date: September 23, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**