PACIFIC LEGAL FOUNDATION

October 30, 2026

Via ECF
The Honorable Zahid N. Quraishi
United States District Judge
Clarkson S. Fisher Building, U.S. Courthouse
402 East State Street
Trenton, NJ 08608

RE: *Earle Asphalt Company, Inc. v. New Jersey Turnpike Authority, et al.*, No. 3:26-4860-ZNQ-TJB

Dear Judge Quraishi:

Plaintiff Earle Asphalt Company, Inc. ("Earle") respectfully submits this combined response to the pre-motion conference requests filed by Defendants Ocean County and Evesham Township ("Local Defendants") and Intervenor-Defendant Building Trades (ECF No. 85), as well as Intervenor-Defendant State of New Jersey ("State Defendant") (ECF No. 86). Earle will oppose the Local and State Defendants' anticipated motions to dismiss. Because settlement of the legal questions raised in Defendants' pre-motion conference requests is unlikely, Earle believes a pre-motion conference would be unhelpful and is prepared to proceed with briefing.

Earle challenges two New Jersey laws that impede the constitutional guarantees of free speech and equal protection. N.J. Admin Code § 17:27-7.3 requires Earle to meet race- and sex-based hiring goals to compete for state contracts, in violation of the Fourteenth Amendment's prohibition on race and sex-based employment quotas. New Jersey's project labor agreement ("PLA") statute, N.J. Rev. Stat § 52:38-1 et seq., compels both speech and association by forcing Earle to hire through union hiring halls and accept exclusive union representation.

**Counts I and III**

Earle alleges an injury in fact sufficient to support Article III standing. On a motion to dismiss, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (cleaned up). Earle alleges that N.J. Admin Code § 17:27-7.3 forces it to make hiring decisions based upon race and sex as a condition of obtaining state contracts, that Earle is subject to sanctions for noncompliance, and that Earle otherwise remains ready, willing and able to bid on those contracts. ECF No. 1 at ¶¶4, 27, 38–39, 85–106, 119–125. The threat of enforcement is not speculative where, as here, the regulatory scheme expressly contemplates sanctions and Earle is actively participating in the regulated market. *Pic-A-State Pa., Inc. v. Reno*, 76 F.3d 1294, 1300 (3d Cir. 1996). Nor does injury depend on the state's enforcement of N.J. Admin Code § 17:27-7.3 against Earle; in a

forward-looking equal protection claim, the injury-in-fact is the imposition of the racial barrier, not its outcome. *See, e.g., Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993) (contractor's injury was not loss of contract); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) (same).

Third-party standing is not required—and Earle does not assert it—because Earle alleges that the state's race- and sex-based hiring quota directly burdens Earle's own ability to bid on and perform public contracts, and Earle suffers the harm itself as a contractor. ECF No. 1 at ¶¶ 41-42, 104-105. Even if the Court were to apply third-party standing principles here, Earle satisfies the *Kowalski* criteria: it has a close commercial relationship with the employees it must hire, and practical hindrances impede individual employees from challenging these goals. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).

**<u>Count II</u>**

**A. Standing**

Earle alleges a sufficient injury-in-fact. Earle has bid on, won, and successfully completed thousands of Defendants' public works projects. ECF No. 1 at ¶¶ 20-22. Pursuant to the PLA statute, Defendants have imposed, and continue to impose, PLA requirements upon public works projects. *Id.* at ¶¶ 81-83. While Defendants historically awarded a significant portion of their public works contracts to Earle, PLAs now exclude Earle from competing unless Earle agrees to the violation of its First Amendment rights against compelled speech and association. *Id.* at ¶¶ 22, 58-61, 74-84. The complaint identifies specific projects Earle lost due to the inclusion of PLA requirements. The complaint also identifies specific contracts that Earle would have bid on but for the unlawful PLA requirement. *Id.* at ¶¶ 60, 70, 79. Approximately eighty percent of Earle's annual revenue is impacted by PLAs. *Id.* at ¶ 83.

This Court's preliminary-injunction order does not foreclose Earle's standing at the motion to dismiss stage. ECF No. 78 at 8-10. Because Earle has alleged facts showing a historical pattern of bidding for and winning Defendants' public works projects before the PLA requirements were mandated, and because Defendants are unlikely to contend that they no longer intend to bid out public works projects of the type Earle has bid on and won for decades, this Court may find that Earle suffers an actual, imminent injury-in-fact. *See Adarand Constructors*, 515 U.S. at 212 (finding imminent injury where contractor had history of bidding on relevant contracts and government was likely to let relevant contracts at least once per year).

**B. Compelled Speech**

The government may not compel the subsidization of union speech on matters of public concern. *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps, Council 31*, 585 U.S. 878, 886 (2018). Earle alleges that the PLA statute does exactly this: access to public contracts come at the price of subsidizing union speech through union benefit fund contributions. ECF. No. 1 at ¶¶ 52, 69, 78, 116-117. Despite Defendants' claims, this pay-to-play model does not permit Earle to "voluntarily 'choose to participate' in a public works contracting process that involves a PLA requirement." ECF No. 86 at 3. With approximately eighty percent of its annual revenue from public works

projects subject to PLAs, Earle's choice is between consenting to subsidize union speech or closing its doors. As this district recently held, this is no choice—it is compelled speech. *George Harms Constr. Co. v. Gateway Dev. Comm'n*, No. CV 25-17679, 2025 WL 3551821, at *7 (D.N.J. Dec. 11, 2025) (requiring a contractor to bid on a PLA-covered project "would effectively mean being compelled to pay into employee benefit funds notwithstanding their reservations to do so.") The Local Defendants' claim that union benefit funds do not subsidize union activity is unconvincing; the Supreme Court has long been clear that "a union's money is fungible," and even fees spent on nonpolitical activities "free up other funds to be spent for political purposes." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 317 n. 6 (2012).

**C. Compelled Association**

The Third Circuit is clear that contractors' First Amendment freedom of association is violated when they or their employees are "forced to recognize a union as the exclusive representative of their employees, hire employees from a union's job-referral system[], and financially contribute to unions in order to work on PLA-covered projects." *Associated Builders & Contractors W. Pennsylvania v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 289 (3d Cir. 2023) (cleaned up). Like the contractor-plaintiffs in Associated Builders, Earle also maintains a commitment to the "Merit Shop philosophy," *id.*, and alleges that its fifty-eight years as a merit shop publicly and operationally distinguish it from its unionized competitors. *See, e.g.*, ECF. No. 1 at ¶¶ 2, 11, 23–24, 55, 61. The PLA statute's requirement that public works bidders consent to exclusive representation, union hiring halls, and financial contributions is more than "commercial conduct," ECF No. 86 at 3; it publicly and operationally erases Earle's fifty-eight years as a merit shop. An "intangible" association injury like Earle's "is no less concrete when it is specified by the Constitution itself." *Associated Builders*, 81 F.4th at 289 (cleaned up).

Respectfully submitted,

/s/ Sean Radomski
Sean Radomski
Attorney for Plaintiff

cc: All counsel of record (by ECF)